UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSANNE SWANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:18-CV-4125 |
| ) | |
| INSITUFORM TECHNOLOGIES USA, LLC. ) | |
| formerly known as ) | |
| INSITUFORM TECHNOLOGIES USA, INC. ) | TRIAL BY JURY DEMANDED |
| ) | |
| Defendant(s). ) | |

## COMPLAINT

NOW COMES Plaintiff, SUSANNE SWANSON, by her attorney, DANIEL J. KORDIK of KORDIK LAW FIRM, and for her Complaint states:

## PARTIES

1. Plaintiff, SUSANNE SWANSON ("Ms. Swanson"), is a resident of the City of Elmhurst, County of DuPage, and State of Illinois.

2. Defendant, INSITUFORM TECHNOLOGIES USA, LLC, is a Delaware company with its main office located at 17988 Edison Ave., Chesterfield, Missouri and is a successor company of INSITUFORM TECHNOLOGIES USA, INC., which defendant(s) are hereinafter sometimes referred to as "INSITUFORM".

## JURISDICTION

3. This court has jurisdiction in this matter based on diversity since this is a controversy between citizens of two different states, the cause of action arose out of a tortious act

1

which occurred in the State of Illinois and the amount in controversy is greater than $75,000.00.

## GENERAL ALLEGATIONS OF FACT

4. This case was previously filed under Civil Action No. 1:15-cv-02335, was voluntarily dismissed without prejudice by stipulation pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii) on June 15, 2017, and is refiled within one year thereafter.

5. Plaintiff, SUSANNE SWANSON, resides at 850 South York Street in Elmhurst, Illinois ["the Swanson Residence"].

6. Insituform Technologies USA, LLC was hired by the City of Elmhurst to perform certain sewer reconstruction work.

7. Insituform Technologies USA, Inc. was hired by the City of Elmhurst to perform certain sewer reconstruction work.

8. Insituform Technologies USA, LLC is a successor of Insituform Technologies USA, Inc. which was hired by the City of Elmhurst to perform certain sewer reconstruction work.

9. On or about March 20, 2012, through on or about March 27, 2012, INSITUFORM, authorized by the City of Elmhurst, performed sewer reconstruction work in Elmhurst, Illinois, at or near the Swanson residence.

10. The Swanson residence is near the sewer line where INSITUFORM performed its reconstruction.

11. During the sewer reconstruction, the sewer connection to the residential properties were to be sealed off by INSITUFORM for up to 10 hours. The residents of Elmhurst were asked to make limited use of their toilet facilities and refrain from doing laundry at the time.

12. INSITUFORM was to issue a yellow door hanger 24 hours in advance informing the residents of the City of Elmhurst, including Swanson, of the time and date of the 10 hour period that the residents were asked to limit their water use.

13. INSITUFORM failed to provide a yellow card to Ms. Swanson twenty-four hours before INSITUFORM

    performed work outside the Swanson residence on March 20, 2012.

14. At all times, Ms. Swanson had the intent of moving out of her home once she received notice that INSITUFORM was going to work on the sewer near the Swanson residence to avoid any exposure to chemicals and noxious fumes released in the process.

15. At all times, Ms. Swanson intended to vacate the Swanson residence at times when INSITUFORM was performing work on the sewer near the Swanson residence, in order to avoid any exposure to chemicals and noxious fumes released during the course of work.

16. On March 20, 2012, in the middle of the day, Ms. Swanson left work to have lunch at her home. When she arrived, there were trucks parked along the street and resin covered impregnated piping laid out on the parkway outside her home.

17. Ms., Swanson was not aware that INSITUFORM was going to work near her home on this day.

18. When Ms. Swanson exited her vehicle, her eyes, throat and chest began to burn.

19. Ms. Swanson entered her home and again smelled the odor of styrene. The odor lingered for several days.

3

20. On or around March 27, 2012, INSITUFORM began to work on the sewer line near the Swanson residence again exposing Ms. Swanson to the various chemicals and vapors, including styrene.

21. Ms. Swanson continued to smell the odor of styrene in her residence for almost three weeks.

22. The nauseating odors and burning sensation on her skin, throat, eyes and chest continued throughout this period.

23. Defendants released styrene and other toxic chemicals near Ms. Swanson's residence.

24. The cause of the offensive vapors that entered Ms. Swanson's residence and caused her to experience the aforementioned burning sensations were the chemical vapors INSITUFORM released into the Swanson residence and surrounding area while performing the sewer work.

25. INSITUFORM used a process called "Insituform" or "Cured-in-Place-Pipe ("CIPP") to reconstruct certain sections of the city sewer. Instead of digging and replacing the old pipeline, the Insituform process allegedly involves the insertion of a lining inside the pipe, creating a new smooth-surfaced pipe within the old sewer pipe.

26. The lining that INSITUFORM inserted into the old sewer pipe was a resin-saturated felt tube that is heated to harden into what is commonly called "Cured-in-pipe process."

27. INSITUFORM uses a resin that includes Styrene and other chemicals as its components in the resin compound that makes up part of the new pipe.

28. The part of the new pipe is made up of a resin compound that contains Styrene.

4

29. The composition and ingredient information for the resin and lining that INSITUFORM used in the subject sewer reconstruction included Polyester Resin, Styrene and Organic peroxide ("Resin Compound").

30. The Resin Compound has a unique odor.

31. Styrene, one of the ingredients in the Resin Compound, is a highly toxic chemical. It is a clear, colorless liquid that can be detected by its smell which is similar to plastic.

32. The chemicals used in the Resin Compound were highly toxic.

33. Acute exposure to these chemicals, which includes merely inhaling the vapors, causes upper respiratory irritation and possible central nervous system affects including headaches, nausea, vomiting, dizziness, drowsiness, loss or coordination, impaired judgment, and general weakness.

34. Chronic exposure to Styrene is a possible cancer hazard. Prolonged exposure may result in nausea, loss of appetite, general weakness, changes in blood chemistry, and peripheral and central nervous system activity.

35. When INSITUFORM installed the resin saturated felt tube that hardened into a "Cured-in-pipe process" at or near the sewer line close to the Swanson residence, it released styrene vapors, along with other chemical vapors, into the air near the Swanson residence and inside the Swanson residence.

36. At all relevant times, INSITUFORM knew of the dangers and toxicity of the chemicals in the Resin Compound used in performing the Elmhurst sewer reconstruction.

37. At all relevant times, Defendants knew or should have known of:

5

a. the highly toxic nature of the styrene and other chemicals used in the Resin Compound or in the Cured-in-pipe process;

b. the fact that the vapors from the Resin Compound or in the Cured-in-pipe process should not be released into the environment or into the Swanson Residence through the sewer lines;

c. the fact that if vapors from the Resin Compound or in the Cured-in-pipe process were released in any manner into the Swanson residence, it should be properly contained and cleaned up; and

d. the fact that the Swanson residence's location is close proximity to where INSITUFORM performed its work, it required steps to contain vapors from the resin compound.

38. As a consequence of Ms. Swanson's exposure to the Resin Compound vapors and chemicals released into her home and surrounding area by INSITUFORM during its sewer repairs, she sustained the following damages:

    a) Coughing, eye swelling, burning sensation in the eyes, throat, nose and chest;

    b) Medical expenses;

    c) Pain and Suffering;

    d) Loss of Normal Life/Disability;

    e) Emotional Distress; and

    f) Loss of Income.

## COUNT I

## NEGLIGENCE

39. Ms. Swanson repeats, realleges and incorporates by reference Paragraphs 1 through 38, as though fully set forth herein.

40. At all relevant times, it was the duty of INSITUFORM to exercise a reasonable degree of care for Ms. Swanson, including, but not limited the following:

    a) Warning her about being in close proximity to the pipe and equipment;

    b) Cordoning of the area immediately around the pipes that were staged in the public right of way;

    c) Exercising ordinary care in the use and handling of hazardous fumes/vapors/chemicals, including that from Styrene and organic peroxide;

    d) Not permitting or allowing Styrene vapors or other hazardous fumes/vapors/chemicals to be released into the environment, and to invade the Swanson residence;

    e) Promptly responding to any releases of Styrene vapors, or hazardous fumes/vapors/chemicals in a manner sufficient to prevent them from reaching the Swanson residence;

    f) Taking reasonable steps to notify Ms. Swanson of INSITUFORM's release of Styrene vapors or other hazardous vapors/fumes/chemicals, so that she may best protect her health and properties.

41. INSITUFORM breached one or more of these duties by, inter alia, one or all of the following negligent acts and/or omissions:

    a) Carelessly, improperly allowing and causing hazardous substances, including Styrene, to be released near or into the Swanson residence;

7

b) Failing to establish a procedure to prevent or limit the amount of styrene or other hazardous chemicals from being released into the environment;

c) Failing to exercise reasonable care and caution in performing the sewer reconstruction;

d) Failing to provide appropriate safe-guards and security measures to prevent, monitor and/or remedy the release of hazardous substances, including Styrene, into the environment and Swanson residence;

e) Carelessly and improperly storing the Resin Compound during the sewer reconstruction with safe-guards to prevent the chemical's discharge, spillage or escape into the environment;

f) Failing to prevent members of the public from being in close proximity to the staged pipes without personal protective equipment; and

g) Failing to warn Ms. Swanson of the hazardous conditions created by INSITUFORM's release of hazardous substances, including styrene, into the environment and her home.

42. As a direct and proximate result of Defendant's foregoing negligent acts and omissions, hazardous vapors and chemicals, including Styrene, migrated from where INSITUFORM performed the sewer work to the Swanson residence, without warning, and polluted the air used by Ms. Swanson from at least March 20, 2012, until April 8, 2012 while Ms. Swanson resided there and breathed the air.

43. Furthermore, as a direct and proximate result of INSITUFORM's foregoing acts and omissions, Ms. Swanson has been caused to sustain damages and injuries of a personal,

permanent, and pecuniary nature, including but not limited to the incurrence of medical expenses, pain and suffering, loss of a normal life, disability, emotional distress, and lost time and income, which damages continue and are reasonably certain to be incurred in the future.

WHEREFORE, Plaintiff SUSANNE SWANSON prays that this Count enter judgment in her favor and against Defendant as to Count I of her Complaint, for an amount in excess of seventy-five-thousand dollars ($75,000.00) plus costs.

## COUNT II

## WILFUL AND WANTON MISCONDUCT

44. Ms. Swanson repeats, realleges and incorporates by reference Paragraphs 1 through 38, as though fully set forth herein.

45. At all relevant times INSITUFORM knew that Styrene vapors and other chemicals were not to be released near or into people's homes. At all relevant times, INSITUFORM also knew or should have known, that if released, the Styrene vapors and other chemicals in the Resin Compound or Cured-in-pipe process were to be immediately contained or the sewer lines to the Swanson residence should have been sealed off in order to prevent toxic vapors/chemicals from being released nearby or entering her home.

46. Furthermore, INSITUFORM knew or should have know of the likelihood that Styrene vapors or other vapors/chemicals from the Resin Compound or Cured-in-pipe process released at the near the sewer line close to the Swanson residence would invade the air inside or nearby her home. INSITUFORM also knew or should have known, that Ms. Swanson should have been alerted and warned that INSITUFORM was performing sewer

9

reconstruction that would release said vapors/chemicals nearby or into her home for substantial period of time.

47. At all relevant times, it was the duty of INSITUFORM to refrain from willful and wanton misconduct toward Ms. Swanson, including, but not limited to:

    a) Warning her about being in close proximity to the pipe, equipment and sewer reconstruction process;

    b) Cordoning of the area immediately around the pipes that were staged in the public right of way;

    c) Exercising care in the use and handling of hazardous fumes/vapors/chemicals, including that from Styrene and organic peroxide;

    d) Not permitting or allowing Styrene vapors or other hazardous fumes/vapors/chemicals to be released into the environment, and to invade the Swanson residence;

    e) Promptly responding to any releases of Styrene vapors, or hazardous fumes/vapors/chemicals in a manner sufficient to prevent them from reaching the Swanson residence;

    f) Taking reasonable steps to notify and warn Ms. Swanson of INSITUFORM's release of Styrene vapors or other hazardous vapors/fumes/chemicals, so that she may best protect her health and properties.

48.     INSITUFORM have breached said duty, inter alia, by one or all of the following willful and wanton acts and/or omissions, which exhibited an utter indifference and

conscious disregard for the safety and health of Plaintiff, SUSANNE SWANSON and despite the knowledge as alleged above, and with an utter indifference and conscious disregard for the safety and health of Ms. Swanson, Defendant:

    a) Failed to establish a procedure to prevent or limit the amount of styrene or other hazardous chemicals from being released into the environment;

    b) Carelessly, improperly allowed and caused hazardous substances, including Styrene and organic peroxide, to be released into the Swanson residence;

    c) Failed to exercise reasonable care and caution in performing the sewer reconstruction;

    d) Failed to provide appropriate safeguards and security measures to prevent, monitor and/or remedy the release of hazardous substances, including Styrene, into the environment and Swanson residence;

    e) Carelessly and improperly stored the Resin Compound during the sewer reconstruction outside the Swanson residence without safeguards to prevent the chemical's discharge, release, spillage or escape;

    f) Failing to prevent members of the public from being in close proximity to the staged pipes without personal protective equipment; and

    g) Failed to warn Ms. Swanson of the hazardous conditions created by INSITUFORM's release of hazardous substances, including styrene, into the environment and her home.

49. INSITUFORM's foregoing actions were intentional and/or with an utter indifference and conscious disregard for plaintiff's safety, acts allowing hazardous vapors/chemicals,

including styrene, migrated from where INSITUFORM performed the sewer work to the Swanson Residence, without warning, polluting the air used by the Ms. Swanson from March 20, 2012 through April 8, 2012, while she resided there and breathed the air.

50. Furthermore, as a direct and proximate result of INSITUFORM's foregoing acts and omissions, Ms. Swanson has been caused to sustain damages and injuries of a personal, permanent, and pecuniary nature, including but not limited to the incurrence of medical expenses, pain and suffering, loss of a normal life, disability, emotional distress, and lost time and earnings, which damages continue and are reasonably certain to be incurred in the future.

WHEREFORE, Plaintiff SUSANNE SWANSON prays that this Court enter a judgment in her favor and against Defendant as to Count II of her Complaint, for an amount in excess of seventy-five-thousand dollars ($75,000.00) plus costs.

### JURY DEMAND

Plaintiff Susanne Swanson demands trial by jury.

Respectfully requested,

_____
Attorney for Plaintiff

DANIEL J. KORDIK #6188471
KORDIK LAW FIRM
Attorney(s) at Law
276 N. Addison Avenue
Elmhurst, IL 60126-2723
(630) 782-JURY (5879)
danieljkordik@kordiklaw.com